UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAMES C.,

      Plaintiff,

v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      Defendant.

Case No. 1:19-cv-14845
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's applications.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

On May 24, 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since December 31, 2008.[2] R.

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

[2] Plaintiff later amended his alleged disability onset date to August 1, 2012. R. 360.

1

14, 179–80, 201–02, 340–49. The applications were denied initially and upon reconsideration. R. 205–20. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 221, 224. Administrative Law Judge Beverly Susler Parkhurst ("ALJ") held a hearing on July 24, 2017, to address Plaintiff's physical impairments and limitations, at which Plaintiff, who was represented by counsel, testified, as did a medical expert and a vocational expert ("the July 2017 hearing"). R. 14, 33–97. The ALJ held a second hearing on December 18, 2017, to address Plaintiff's mental impairments and limitations, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert ("the December 2017 hearing"). R. 14, 98–155. In a decision dated August 22, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 1, 2012, his amended alleged disability onset date, through the date of the decision. R. 14–25. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 21, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 20.[3] On that same day, the case was reassigned to the undersigned. ECF No. 21. The matter is now ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

3

2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court

4

"cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See, e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong

5

[Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; see *Schonewolf*, 972 F. Supp. at 290.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 33 years old on his alleged disability onset date. R. 23. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine; depressive disorder; anxiety disorder/post-traumatic stress disorder ("PTSD"); and attention deficit hyperactivity disorder ("ADHD"). *Id*. The ALJ also found that Plaintiff's diagnosed impairment of hypertension and alleged impairment of obsessive compulsive disorder ("OCD") were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 17–19.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 19–22. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a meter reader. R. 22–23.

At step five, the ALJ found that a significant number of jobs existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 23–25. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 1, 2012, Plaintiff's amended alleged disability onset date, through the date of the decision. R. 25.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 19. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 16.

## IV. DISCUSSION

Plaintiff challenges the ALJ's step five determination, arguing that the Commissioner failed to carry his burden at that stage because, *inter alia*, the ALJ failed to clarify which jobs Plaintiff could perform and never asked the vocational expert a hypothetical that included all of Plaintiff's physical and mental limitations imposed by his impairments. *Plaintiff's Brief*, ECF No. 15, pp. 36–38; *Plaintiff's Reply Brief*, ECF No. 19, pp. 9–11. This Court agrees.

At step five, the ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). Unlike in the first four steps of the sequential evaluation, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r*

*Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id*. at 205−06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative

9

employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

Here, at the July 2017 hearing, Plaintiff "requested more time and leave to file additional medical evidence regarding the claimant's mental health conditions and treatment." R. 14. That request was granted, and Plaintiff's "claim was heard in two parts: the July 2017 hearing addressed to the claimant's allegations and evidence concerning his physical health, and the December 2017 hearing addressed to the claimant's allegations and evidence concerning his mental health." R. 24. At the July 2017 hearing, the ALJ did not permit Plaintiff's counsel to question the vocational expert regarding Plaintiff's mental impairments or nonexertional limitations because the ALJ had "not heard any evidence, nor [had she] received the rest of the evidence on the mental side." R. 88; *see also id.* ("We're not getting to cognitive now. We're not."), 94 ("Not non-exertional, only the physical. We're doing the physical side of the case now."). However, at the December 2017 hearing, the ALJ stated, "We took the vocational expert's testimony on the physical side of the case [at the July 2017 hearing], so we are exclusively talking about mental today. That's it." R. 101. The ALJ therefore forbade Plaintiff's counsel from questioning the vocational expert about work-related limitations resulting from Plaintiff's physical impairments at the December 2017 hearing. R. 138 ("I'm not going to address physical. We addressed that last time."), 153 ("We did the physical the last time."; "And

10

obviously today I'm not addressing physical."), 154 ("I told you we're not doing physical today. We did that last time.").

In her written decision, the ALJ found at step two of the sequential evaluation that Plaintiff suffered from severe physical and mental impairments, and specifically noted that Plaintiff had moderate limitations in his ability to understand, remember, and apply information and in his ability to concentrate, persist, and maintain pace. R. 18–19. At step four, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work and was limited to *"simple and routine work."* R. 19–20 (emphasis added).

At step five, the ALJ summarized the vocational expert testimony at the two hearings as follows:

> At the July 2017, an internal medicine medical expert, Sai R. Nimmagadda, M.D., testified as to the claimant's physical limitations. The vocational expert identified jobs capable of being performed *within those limitations*, and all of the jobs so identified were classified as SVP-2 or lower positions, which corresponds to unskilled work (*see* Social Security Ruling 00-4p). The vocational expert also indicated the number of these jobs existing in the national economy. The identified jobs were:
>
> • **Bench assembler** (D.O.T. # 734.687-018)
>   Sedentary unskilled (SVP-2); 241,000 positions nationally
>
> • **Callout operator** (D.O.T. # 237.367-014)
>   Sedentary unskilled (SVP-2); 20,000 positions nationally
>
> • **Charge account clerk** (D.O.T. # 205.367-014)
>   Sedentary unskilled (SVP-2); 184,000 positions nationally
>
> At the December 2017 hearing, the vocational expert testified in response to two hypotheticals. The first December 2017 hypothetical included no limitations except a restriction to unskilled, simple and routine work. The second December 2017 hypothetical added further restrictions of no more than occasional interactions with coworkers, supervisors, and the public. (Restrictions regarding the skill level, simplicity or complexity of work tasks, and frequency of workplace interactions are ordinarily described as "mental" restrictions, and that descriptor will be so used

herein.) The vocational expert identified jobs within the medium, light, and sedentary exertional categories that were capable of being performed within these mental restrictions. The identified jobs were:

> • **Hand packager** (D.O.T. # 920.687-066)
> Medium unskilled (SVP-2); 445,000 positions nationally
>
> • **Sorter** (D.O.T. # 788.687-106)
> Light unskilled (SVP-2); 102,000 positions nationally
>
> • **Assembler** (D.O.T. # 713.687-018)
> Sedentary unskilled (SVP-2); 106,000 positions nationally

The vocational expert testified that the addition of interaction limitations in the second December 2017 hypothetical would not preclude any of the identified jobs nor alter the number of positions existing in the national economy.

R. 24 (emphasis added).[4] After determining that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles ("DOT"), the ALJ went on to find as follows:

> Based on the testimony of the vocational expert, the undersigned concludes that, considering the Claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

R. 25. The ALJ therefore concluded that Plaintiff had not been under a disability from August 1, 2012, his amended alleged disability onset date, through the date of the decision. *Id*.

Plaintiff argues that the Commissioner has not met his burden at step five because, *inter alia*, the ALJ did not identify which jobs Plaintiff could perform despite limitations resulting from his physical and mental impairments and because the ALJ never asked the vocational expert a hypothetical that included all of the physical and mental limitations imposed by these impairments. *Plaintiff's Brief*, ECF No. 15, pp. 36–38; *Plaintiff's Reply Brief*, ECF No. 19, pp. 9–11. Plaintiff's argument is well taken. As set forth above, the ALJ bifurcated Plaintiff's mental

---

[4] Plaintiff objected to these job numbers, which objection the ALJ overruled. R. 24–25. The Court does not address that issue in this decision.

and physical impairments and limitations into two separate hearings and prohibited Plaintiff's counsel from asking the vocational expert about both physical and mental limitations in each hearing; instead, the ALJ permitted questions to the vocational expert relating to only physical limitations at the July 2017 hearing and questions to the vocational expert relating to only mental or nonexertional limitations at the December 2017 hearing. R. 14, 24, 88, 94, 101, 138, 153–54. At the July 2017 hearing, the hypothetical posed by the ALJ to the vocational expert was limited to only Plaintiff's physical limitations: It assumed a claimant with Plaintiff's age and vocational and educational background with the ability to lift and carry ten pounds frequently and twenty pounds occasionally; the ability to stand and/or walk two to four hours and sit six hours in an eight-hour workday; an unlimited ability to push/pull and engage in fine and gross bilateral manipulation; an ability to engage in the occasional performance of postural activities; unlimited visual, speech, and hearing abilities; an ability to only occasionally climb ramps and stairs; and no ability to climb ladders, ropes, or scaffolds. R. 83–84. When the ALJ asked the vocational expert to identify only unskilled jobs that such a hypothetical person could perform, the vocational expert responded that the jobs of bench assembler, callout operator, and charge account clerk—all jobs identified in the DOT as sedentary—could be performed by such an individual. R. 84–85, 89–92. At the December 2017 hearing, the first hypothetical question posed by the ALJ to the vocational expert contained only Plaintiff's mental limitations: "Are there any simple, routine jobs at any exertional level, starting with medium." R. 138. In response, the vocational expert identified the jobs of hand packer (unskilled, medium exertion), sorter (unskilled, light exertion), and assembler (unskilled, sedentary exertion). R. 138–39.

However, the RFC ultimately found by the ALJ contained both physical and mental limitations: The ALJ assessed an RFC for a limited range of light exertional work with certain

13

additional postural limitations and limited further to unskilled, simple and routine work. R. 19–20. Accordingly, none of the ALJ's hypothetical questions to the vocational expert contained all the physical and mental limitations that the ALJ ultimately found. Notably, as Plaintiff points out, the ALJ simply listed the jobs identified by the vocational expert without specifying which jobs Plaintiff could perform. R. 24–25.

The Commissioner contends that "[t]o the extent the jobs identified at the second hearing were outside of the ALJ's physical RFC, any error in the ALJ's statement is harmless because the ALJ need only find one job that exists in significant numbers; and there were three separate occupations identified by the vocational expert during the first hearing that were all within the ALJ's RFC finding (Tr. 84-85)." *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 16, p. 26 n.7. The ALJ, however, did not rely on this rationale in finding that Plaintiff was not disabled, nor did she articulate how Plaintiff, with his particular physical and mental limitations, could perform any of the jobs identified by the vocational expert at either hearing. R. 24–25. The Commissioner's *post hoc* rationalization in this regard must be rejected. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which

may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted).

In short, because the ALJ expressly relied on the vocational expert's testimony in response to hypothetical questions that did not contain all Plaintiff's physical and mental limitations, R. 24–25, the Court cannot conclude that this error was harmless or that substantial evidence supports the ALJ's decision. *See Chrupcala*, 829 F.2d at 1276; *Podedworny*, 745 F.2d at 218; *Sutton v. The Soc. Sec. Admin.*, No. CV 19-15667, 2020 WL 4432504, at *4–5 (D.N.J. July 31, 2020) ("Although the ALJ may have reasons for concluding that Plaintiff would be able to successfully gain employment in one of the listed professions, despite the apparent contradiction between Plaintiff's RFC and the VE's testimony, those reasons are not adequately articulated in the decision."); *Sawyer v. Berryhill*, 305 F. Supp. 3d 664, 671 (E.D. Pa. 2018) ("The Court is not a vocational expert and is thus not in a position to impute reasons why the ALJ did not include this limitation in his hypothetical or whether his failure to do so is harmless in this case. Absent further vocational expert testimony with an appropriate limitation (or explanation), the Court cannot speculate as to the outcome."). This Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of these step five issues even if, upon further examination of these issues, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay

speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").[5]

## V. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date: July 15, 2021                                *s/Norah McCann King*
                                                                  NORAH McCANN KING
                                                        UNITED STATES MAGISTRATE JUDGE

---

[5] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of these issues at step five, the Court need not and does not consider those claims.